**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-20321

PILLAR PANAMA, S.A.; BASTIMENTOS HOLDINGS, S.A.

Plaintiffs – Appellants

v.

FRANCIS DELAPE, a citizen of Texas; RICHARD KIIBLER, a citizen of Texas; BENCHMARK EQUITY GROUP, INC., a Delaware corporation; SIX DIAMOND RESORTS INTERNATIONAL,

Defendants – Appellees

*consolidated with*

No. 08-20568

PILLAR PANAMA, S.A.; BASTIMENTOS HOLDINGS, S.A.

Plaintiffs – Appellants

v.

FRANCIS DELAPE, a Citizen of Texas; RICHARD KIIBLER, a Citizen of Texas; BENCHMARK EQUITY GROUP, INC., a Delaware Corporation,

Defendants – Appellees

Appeals from the United States District Court
for the Southern District of Texas
USDC 4:07-CV-01922

Before GARWOOD, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Concluding that this controversy is unripe and, therefore, we lack jurisdiction, we modify the district court's take-nothing judgment to reflect a dismissal without prejudice. We also vacate the sanctions awarded.

## I. Background

Appellant Pillar Panama, S.A. ("Pillar") is a Panamanian corporation and Bastimentos Holdings is its wholly-owned subsidiary. In 2003, Pillar began developing a resort housing development called the Red Frog Beach Club on the Panamanian island of Bastimentos in the Caribbean Sea. The Red Frog project is made up of multiple parcels of land. Pillar markets the Red Frog project internationally, but the vast majority of its customers are United States citizens and residents. Pillar has pre-sold several hundred housing units in the Red Frog Project to United States citizens.

Appellees Francis DeLape and Richard Kiibler are United States citizens who have listed addresses in Houston, Texas. They are principals and owners of Appellee Benchmark Equity Group, Inc. ("Benchmark") (a Delaware corporation with its principal place of business in Houston) and Appellee Six Diamond Resorts International ("Six Diamond") (a Cayman Islands corporation with its principal place of business in Houston). In September 2006, Appellees

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

arrived in Panama and launched several resort projects of their own to compete with other developers, including Pillar.

Pillar and Appellees dispute title and possessory rights to the parcels of land that Pillar is developing and marketing. Pillar claims to be the victor in Panamanian court decisions, while Appellees cite actions of the town's mayor establishing their rights. Since this appeal was docketed, further developments have taken place in the Panamanian courts that further complicate the question of title and possessory rights.

Pillar contends that Appellees have disparaged its services in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (2006), reasoning that, as part and parcel of developing and selling condominiums, Pillar provides services, such as maintenance, to the condominium dwellers. Based on these contentions, among others, Pillar filed the instant suit against DeLape, Kiibler, and Benchmark seeking damages and injunctive relief. The complaint included claims for violations of the Lanham Act and the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.46(b)(23) (Vernon 2008), as well as other state law claims of unfair competition, tortious interference with contract and prospective business relationships, defamation, trespass, and conversion. Pillar asserts federal question jurisdiction under the Lanham Act, with supplemental jurisdiction over the related state law claims.

Before the district court, several of the Appellees filed motions to dismiss for lack of personal jurisdiction and forum non conveniens. Over the next nine months, various motions and responses were filed and the district court conducted a number of conferences with the parties.

On April 16, 2008, the district court issued an Interlocutory Judgment directing that Pillar take nothing from Appellees. On May 1, 2008, the district court reissued its Opinion on Summary Judgment rejecting Pillar's claims, ordering that Pillar take nothing from Appellees, and setting a hearing for

3

sanctions. As part of this order, the district court concluded that it lacked jurisdiction[1] and that forum non conveniens applied.[2] After various further skirmishes before the court, on August 18, 2008, the district court ruled as follows:

1. Pillar Panama, S.A. takes nothing from Benchmark Equity Group, Inc., Six Diamond Resorts International, Francis DeLape, and Richard Kiibler.

2. Benchmark Equity Group Inc., Six Diamond Resorts International, Francis DeLape, and Richard Kiibler recover $385,000 in attorney's fees from Pillar Panama, S.A.

The district court offered no further findings to support its order.

Pillar appeals both the district court's grant of summary judgment and its order for sanctions. These two appeals have been consolidated into the one appeal that is now before this panel.

## II. Standard of Review

We review a dismissal for lack of subject matter jurisdiction de novo. *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 540 (5th Cir. 2005).

## III. Discussion

It is a truism that a court must have jurisdiction to act. Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam). To determine whether claims are ripe, this Court evaluates (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration. *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007), *cert. denied*, 129 S. Ct. 32 (2008). These prongs must be balanced, *Am. Forest & Paper Ass'n v. EPA*, 137 F.3d 291,

---

[1] "Having . . . no jurisdiction, Pillar Panama . . . will take nothing . . . ."

[2] "Panama law governs this matter, and its courts have more jurisdiction and have more convenience."

4

296 (5th Cir. 1998), and "[a] case is generally ripe if any remaining questions are purely legal ones[.]" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). It is fundamental, however, that "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Ctrl. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000). In this sense, the doctrines of ripeness and standing[3] "often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury . . . ." *Texas*, 497 F.3d at 496. If the purported injury is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all[,]" the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985).

Here, uncertainty exists as to who holds title and possessory rights, a question that must be and currently is being adjudicated by the appropriate Panamanian authority. Notwithstanding Appellants' insistence to this Court that they have both title to and the right to possess the land at issue, it is possible that the Supreme Court of Panama will determine that Appellants have neither. In turn, the question of whether Appellants do indeed have the ability, even the right, to deliver the services which form the basis of their Lanham Act claim is "contingent on future events that may not occur as anticipated." *See id.* at 581. Consequently, the Lanham Act question is not ripe for consideration by the district court or this Court. Appellants conceded as much at oral argument.

---

[3] To establish standing, a plaintiff must have suffered an "injury in fact," which the Supreme Court has described as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citation, quotation marks, and footnote omitted).

Because the Lanham Act question is not ripe for consideration, the case should have been dismissed for want of subject matter jurisdiction without consideration of the merits of the claims. *See Sample*, 406 F.3d at 312 (noting that ripeness is an essential component of federal subject matter jurisdiction). Because the Lanham Act forms the sole basis for supplemental jurisdiction over Appellants' state law claims, those claims, too, should have been dismissed for want of jurisdiction. *See Womble v. Bhangu*, 864 F.2d 1212, 1213 (5th Cir. 1989) (holding that state law claims cannot pend from a federal one over which the district court lacks subject matter jurisdiction). We conclude, therefore, that the consideration of the other issues in the case by the district court was surplusage. *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. Unit B Mar. 1981) ("A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction. When a court must dismiss a case for lack of jurisdiction, the court should not adjudicate the merits of the claim." (internal citations omitted)).

Because the resolution of this case is based solely on lack of subject matter jurisdiction, Appellants' claims should be dismissed without prejudice. *See Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (noting that a dismissal for lack of subject matter jurisdiction is not a determination of the merits). The effect of our ruling, then, is to modify the district court's take-nothing judgment to be a dismissal without prejudice. Future events very well may make this claim ripe and proper before the district court. It is just not proper now.

### IV. Sanctions

"We review a [district] court's imposition of sanctions for abuse of discretion." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410 (5th Cir. 1993).[4] The district court's final judgment ordered that

---

[4] "[W]e recognize that a district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of a case[.]" *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 637 (5th Cir. 2008).

Appellees recover $385,000 in attorney's fees from Pillar. The same day that the district court issued its final judgment, it also issued its Opinion on Safe-Harbor Notice, overruling Pillar's objections to its notice of potential sanctions as defective and in violation of Federal Rule of Civil Procedure 11. In this opinion, the district court neither referenced nor relied on Rule 11 as its basis for imposing sanctions against Pillar; rather, the district court cited *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), and found that the multiple examples of "Pillar's intransigence" were sufficient to trigger the court's inherent power to sanction bad faith conduct.

This Court has reversed sanctions awards when, as here, the district court merely made a generalized complaint about the sanctioned party's conduct. *See, e.g., Goldin v. Bartholow*, 166 F.3d 710, 722-23 (5th Cir. 1999); *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995); *cf. Travelers Ins. Co. v. St. Jude Hospital of Kenner, La., Inc.*, 38 F.3d 1414, 1417 n.6 (5th Cir. 1994) (finding of bad faith supported by five paragraphs in order specifically addressing plaintiff's conduct). "Moreover, the standard for the imposition of sanctions using the court's inherent powers is extremely high. The court must find that the very temple of justice has been defiled by the sanctioned party's conduct." *Goldin*, 166 F.3d at 722-23 (internal quotation marks and citation omitted). Because "[n]othing in the record reflects conduct that reaches this level[,] . . . the imposition of sanctions using the court's inherent powers . . . constitutes an abuse of discretion," and requires reversal. *Id.* at 723. Appellants are warned, however,

---

"'It is well established that a federal court may consider collateral issues after an action is no longer pending.'" *Id.* at 637-38 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 137-39 (1992) (holding that a district court had jurisdiction to impose Rule 11 sanctions regardless of the existence of subject-matter jurisdiction).

that contemplated future filings in the courts should be carefully scrutinized before filing to ensure that they present a current case or controversy.[5]

## V. Conclusion

Accordingly, the district court's judgment is MODIFIED to reflect a dismissal of the case without prejudice. The award of sanctions is REVERSED. Our resolution of this case means that there will be no further activities in the district court in this case. Accordingly, we need not decide Appellants' request to send this case to another district judge, and we express no opinion on that matter.

---

[5] Although Appellees moved for Rule 11 sanctions, it appears that the district court imposed sanctions against Pillar pursuant to its inherent powers, not Rule 11. Regardless, the record would not have supported such an award. "A district court abuses its discretion if it imposes Rule 11 sanctions based on (1) an erroneous view of the law or (2) a clearly erroneous assessment of the evidence." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006). Rule 11 imposes an objective standard of "reasonableness under the circumstances." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) (en banc). "The district court is not only required to determine whether the total hours claimed are reasonable, but also whether particular hours claimed were reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citation omitted).

Appellees submitted an affidavit to the district court stating they incurred $540,481.62 in legal fees for 1,174.7 hours. The affidavit also listed the documents drafted for this case, the hearings and meetings attended, and the people who performed legal work and their corresponding billing rates. The affidavit further averred that the billing rates were reasonable and customary for those charged in the Houston area for the same or similar services performed by professionals with comparable experience, ability, and reputation. However, no billing records were submitted; there was no indication of how much time was spent on any particular document, hearing, or meeting; and there was no indication of who was performing what task at which applicable billing rate. It is impossible to determine from this record whether "particular hours claimed [by Appellees] were reasonably expended on the litigation" or were caused by any sanctionable conduct. *Id.* at 325. Accordingly, the imposition of sanctions pursuant to Rule 11 would have constituted an abuse of discretion.